UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK A. BROOKS-ALBRECHTSEN, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> vs. ) <br> ) <br> MITCHELL Officer, in his individual and ) <br> official capacity as a police officer for the ) <br> Indianapolis Metro. Police Dep't., Department ) <br> of Public Safety, ) <br> ) <br> *Defendant*. ) | No. 1:15-cv-01854-JMS-TAB |

## ORDER

This action stems from a traffic encounter between *pro se* Plaintiff Mark A. Brooks-Albrechtsen and Defendant Indianapolis Metropolitan Police Department ("IMPD") Officer Mitchell that lasted forty seconds. After that encounter, Mr. Brooks-Albrechtsen sued Officer Mitchell in his individual capacity pursuant to 42 U.S.C. § 1983. [Filing No. 2.] Presently pending before the Court are the parties' Cross-Motions for Summary Judgment, [Filing No. 13; Filing No. 28], and Mr. Brooks-Albrechtsen's Motion to Strike portions of Officer Mitchell's reply brief on summary judgment, [Filing No. 53].

### I.
### APPLICABLE STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or

affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). "The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on

which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648.

As the Seventh Circuit recently recognized, "a twist on the usual standard of review is at play" when the evidence includes a videotape of the relevant events. *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016). In that circumstance, "the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Id.* Instead, the Court should rely primarily on the videotape. *Id.*

## II.
### RELEVANT BACKGROUND

The following statement of facts was evaluated pursuant to the standards set forth above, specifically in light of the Seventh Circuit's recent precedent that when the evidence includes a videotape of the relevant events, the Court should rely primarily on it. *Williams*, 809 F.3d at 942.

### A. Traffic Encounter

At approximately 1:24 a.m. on October 18, 2015, Mr. Brooks-Albrechtsen was working as an Uber driver, transporting a passenger eastbound on East 71st Street from Shadeland Avenue towards Hague Road in Indianapolis. [Filing No. 13-1 at 1; Filing No. 14.] As he came over a hill, he observed the emergency lights of a stationary police vehicle on the right side of the road. [Filing No. 13-1 at 1; Filing No. 14.] As he approached, he saw an IMPD officer standing in front of the patrol car with an individual who appeared to be in handcuffs. [Filing No. 13-1 at 1.] The traffic light at the intersection he was approaching was flashing red. [Filing No. 14.]

As Mr. Brooks-Albrechtsen's vehicle approached the intersection, Officer Mitchell walked into his traffic lane. [Filing No. 13-1 at 1.] Officer Mitchell approached Mr. Brooks-Albrechtsen's

vehicle, and Mr. Brooks-Albrechtsen rolled down his car window. [Filing No. 14.] The following conversation ensued:

> Officer Mitchell: "Have you had anything to drink tonight?"
>
> Mr. Brooks-Albrechtsen: "Not at all."
>
> Officer Mitchell: "Okay. Why is it that I can hear your car going at a high rate of speed before I even see your lights?"
>
> Mr. Brooks-Albrechtsen: "I don't know, man."
>
> Officer Mitchell: "Then when I see your lights, I still hear your car going at a high rate of speed when you see these red and blue lights."
>
> Mr. Brooks-Albrechtsen: "I don't know, man."
>
> Officer Mitchell: "Do you think that's sufficient enough."
>
> Mr. Brooks-Albrechtsen: "Sufficient enough for what?"
>
> Officer Mitchell: "For you to be driving the way you're driving. Would you like a ticket?"
>
> Mr. Brooks-Albrechtsen: "No, sir."
>
> Officer Mitchell: "Okay, I suggest you slow down."

[Filing No. 13-1 at 1-2; Filing No. 14.]

The entire encounter lasted forty seconds and was recorded by a dash-mounted video camera in Mr. Brooks-Albrechtsen's car. [Filing No. 13-1 at 2; Filing No. 14.] Mr. Brooks-Albrechtsen felt "absolutely violated" by the encounter. [Filing No. 13-1 at 2.]

**B. Procedural History**

This case was opened on November 18, 2015, after a claim that Mr. Brooks-Albrechtsen asserted against Officer Mitchell in an amended pleading in another case was severed and opened as this case. [Filing No. 1.] The only claim pending in this action is Mr. Brooks-Albrechtsen's 42

U.S.C. § 1983 claim against Officer Mitchell, stemming from the traffic encounter.[1] [Filing No. 1 at 2-3.]

On February 2, 2016, Mr. Brooks-Albrechtsen moved for summary judgment on his § 1983 claim against Officer Mitchell. [Filing No. 13.] Officer Mitchell responded on June 3, 2016, and filed a cross-motion for summary judgment. [Filing No. 28.] The parties briefed the pending motions, and Mr. Brooks-Albrechtsen filed a Motion to Strike portions of Officer Mitchell's reply brief on August 2, 2016. [Filing No. 53.] All pending motions are now fully briefed and ready for the Court's review.

### III.
#### DISCUSSION

In moving for summary judgment, Mr. Brooks-Albrechtsen argues that Officer Mitchell seized him within the meaning of the Fourth Amendment by demonstrating a show of authority. [Filing No. 13 at 6-7.] Although he concedes that Officer Mitchell's initial "action of walking in front of Plaintiff's vehicle alone is insufficient to amount to a seizure," he argues that Officer Mitchell's allegedly threatening and authoritative tone turned the encounter into a seizure because

---

[1] Mr. Brooks-Albrechtsen is mistaken if he believes that a *Monell* claim is also pending in this action against IMPD. [*See* Filing No. 42 at 8-9 (brief citing municipal liability cases); Filing No. 53 at 1 (Mr. Brooks-Albrechtsen asking Court to strike Officer Mitchell's argument that Mr. Brooks-Albrechtsen "failed to plead *Monell* claims"); Filing No. 56 at 2 (Officer Mitchell's representation that Mr. Brooks-Albrechtsen argued in a recent settlement demand that Officer Mitchell "failed to address the *Monell* claims in his cross-motion for summary judgment").] It is clear from the Entry Severing Claims And Directing Further Proceedings that Officer Mitchell is the only Defendant in this action and the only claim pending against him is a § 1983 claim. [Filing No. 1 at 2-3.] Mr. Brooks-Albrechtsen never asked the Court to reconsider that ruling. Thus, the Court denies Mr. Brooks-Albrechtsen's request to strike Officer Mitchell's argument that Mr. Brooks-Albrechtsen failed to raise a *Monell* claim in this action. [Filing No. 53 at 1.] Even if Mr. Brooks-Albrechtsen had asserted a *Monell* claim, it would fail because as the Court concludes below, there is no requisite underlying constitutional violation by Officer Mitchell. *See Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010) ("a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee").

Mr. Brooks-Albrechtsen "did not feel free to leave." [Filing No. 13 at 6-7.] Mr. Brooks-Albrechtsen argues that Officer Mitchell lacked probable cause or reasonable suspicion to seize him because Officer Mitchell "did *not* observe Plaintiff speeding, but only heard Plaintiff 'traveling at a high rate of speed.'" [Filing No. 13 at 7 (original emphasis).] He emphasizes that there is "no law prohibiting a vehicle from sounding fast" and that many factors can impact how fast a vehicle sounds. [Filing No. 13 at 7-8.] He asserts that Officer Mitchell cannot successfully invoke qualified immunity under these circumstances. [Filing No. 13 at 8.]

In response, Officer Mitchell invokes qualified immunity and asks for summary judgment in his favor. [Filing No. 29 at 4.] He points out that to stop Mr. Brooks-Albrechtsen, Officer Mitchell needed only to have had probable cause to believe that a traffic violation had occurred. [Filing No. 29 at 5.] Officer Mitchell emphasizes that his point of view—not Mr. Brooks-Albrechtsen's—is key and that his behavior was reasonable because Officer Mitchell had probable cause to believe that Mr. Brooks-Albrechtsen was not slowing down when he saw that the police car's emergency lights were activated. [Filing No. 29 at 6-7.] Alternatively, Officer Mitchell argues that Mr. Brooks-Albrechtsen cannot establish that Officer Mitchell's conduct was so egregious that a reasonable person would know that he was violating Mr. Brooks-Albrechtsen's constitutional rights. [Filing No. 29 at 7-8.]

In reply in support of his motion for summary judgment and in response to Officer Mitchell's motion, Mr. Brooks-Albrechtsen alleges that his feeling that he did not think he could leave is relevant to the qualified immunity analysis. [Filing No. 42 at 1-2.] He argues that Officer Mitchell cannot successfully invoke qualified immunity because "an officer *hearing* a vehicle going at a high rate of speed, without more, [does not have] probable cause to stop the vehicle." [Filing No. 42 at 4-5 (original emphasis).] He emphasizes that there is "no law that prohibits a

vehicle from sounding fast" and that "several factors contribute to the sound of a vehicle." [Filing No. 42 at 6.] Mr. Brooks-Albrechtsen contends that established Seventh Circuit precedent confirms that Officer Mitchell would not have probable cause to stop a vehicle just for sounding fast, so Officer Mitchell cannot invoke qualified immunity. [Filing No. 42 at 5 (citing cases).]

In his reply brief supporting his summary judgment request, Officer Mitchell again emphasizes that Mr. Brooks-Albrechtsen's subjective feelings regarding the traffic encounter are irrelevant to determining qualified immunity. [Filing No. 51 at 1-3.] Officer Mitchell contends that he had reasonable suspicion to initiate a traffic stop because the undisputed evidence is that Mr. Brooks-Albrechtsen did not reduce his speed upon seeing the flashing emergency lights, which is a violation of Indiana Code § 9-21-8-35(b). [Filing No. 51 at 4-5.] Officer Mitchell points out that reasonable suspicion need not rule out the possibility of innocent conduct, such as other reasons a vehicle may sound fast as it approaches. [Filing No. 51 at 5-6.] Alternatively, he also contends that the "law establishing a 40 second traffic stop as unconstitutional was not clearly established at the time of this incident," such that qualified immunity applies. [Filing No. 51 at 6-8.]

### A. Generally Applicable Law

#### 1. Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). Put another way, reasonableness is the "ultimate touchstone" of the Fourth Amendment. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 398 (2006).

### 2. 42 U.S.C. § 1983

Section 1983 provides that "[e]very person who, under color of any . . . State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in the action at law." 42 U.S.C. § 1983. Actions by a police officer in his or her capacity as a police officer are considered acts taken "under color of" state law. *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990). A § 1983 claim "allow[s] a plaintiff to seek money damages from government officials who have violated his Fourth Amendment rights." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

### 3. Qualified Immunity

"Government officials performing discretionary functions enjoy a qualified immunity . . . ." *Leaf v. Shelnutt*, 400 F.3d 1070, 1079 (7th Cir. 2005). It is "*immunity from suit* rather than a mere defense to liability." *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 988 (7th Cir. 2012) (emphasis in original) (citation and quotation marks omitted). "Qualified immunity gives government officials 'the benefit of legal doubts.'" *Rooni v. Biser*, 742 F.3d 737, 743 (7th Cir. 2014) (quoting *Elliott v. Thomas*, 937 F.2d 338, 341 (7th Cir. 1991)); *see Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) ("Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties."). Its purpose is "to provide reasonable notice to government officials that certain conduct violates constitutional rights before a plaintiff can subject them to liability." *Narducci v. Moore*, 572 F.3d 313, 318 (7th Cir. 2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009). "Once the defense of qualified immunity is raised, 'it becomes the plaintiff's burden to defeat it.'" *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quoting *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)).

"To determine whether a defendant is entitled to qualified immunity, courts must address two issues: (1) whether the defendant violated the plaintiff's constitutional rights and (2) whether the right at issue was clearly established at the time of the violation." *Rooni*, 742 F.3d at 742 (citation omitted). The Court may decide these factors in either order. *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012). If the right at issue was not clearly established at the time of the violation, the Court may exercise its discretion not to determine whether the defendant violated that plaintiff's constitutional right. *See Pearson*, 555 U.S. at 236 ("[T]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

To determine whether a right is clearly established, the Court looks to controlling precedent from both the Supreme Court and the Seventh Circuit Court of Appeals, and if there is no such precedent it "cast[s] a wider net" and examines "all relevant case law to determine whether there was such a clear trend in the case law that [it] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013). "To be clearly established at the time of the challenged conduct, the right's contours must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right,' and 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013) (quoting *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012)).

### B. Alleged Violation of Constitutional Rights

After analyzing the parties' qualified immunity arguments, the Court finds it proper to address the first element—whether Officer Mitchell violated Mr. Brooks-Albrechtsen's constitutional rights during the traffic encounter.

The Government bears the burden of proving by a preponderance of the evidence that a warrantless stop is supported by probable cause.[2] *United States v. Peters*, 743 F.3d 1113, 1116 (7th Cir. 2014) (citations omitted). "When a police officer reasonably believes that a driver has committed even a minor traffic offense, probable cause supports the stop." *Id.* at 1116; *see also United States v. Reaves*, 796 F.3d 738, 741 (7th Cir. 2015) ("An officer has probable cause for a traffic stop when she has an 'objectively reasonable' basis to believe a traffic law has been violated.").

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). When it is "[a] relatively brief encounter, a routine traffic stop is more analogous to a so-called *Terry* stop than to a formal arrest."

---

[2] In his opening brief, Mr. Brooks-Albrechtsen concedes that Officer Mitchell's "action of walking in front of Plaintiff's vehicle alone is insufficient to amount to a seizure." [Filing No. 13 at 6-7.] He contends, however, that Officer Mitchell's allegedly threatening and authoritative tone turned the encounter into a seizure because Mr. Brooks-Albrechtsen "did not feel free to leave." [Filing No. 13 at 6-7.] In his response brief, Officer Mitchell does not dispute that he seized Mr. Brooks-Albrechtsen during the traffic encounter. [Filing No. 29.] The Court will defer to Officer Mitchell's decision not to contest that the brief encounter was a seizure for purposes of the Fourth Amendment. *See Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("[W]e follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). The Court notes, however, that whether or not Officer Mitchell actually seized Mr. Brooks-Albrechtsen during the forty seconds they interacted is a close call, given that the light at the intersection where Officer Mitchell was located was flashing red and Mr. Brooks-Albrechtsen had to stop there anyway. *See United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011) ("a person is seized only when, by means of physical force or a show of authority, his freedom of movement is restrained . . . . [A] 'show of authority' alone is insufficient; an officer's show of authority becomes a seizure only if the person at whom it is directed actually submits to that authority.").

*Id.* (citations and quotations omitted). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* (citations and quotations omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* An officer initiating an investigatory stop must be able to point to "specific and articulable facts that suggest criminality so that he is not basing his actions on a mere hunch." *United States v. Uribe*, 709 F.3d 646, 650 (7th Cir. 2013). An officer's subjective motivations for stopping and detaining a suspect are not relevant to the reasonableness inquiry; instead, it is "based on the totality of the circumstances known to the officer at the time the stop is made." *Id.*

Mr. Brooks-Albrechtsen claims that Officer Mitchell allegedly stopped him for "auditory speeding," which he emphasizes is not a crime. [Filing No. 13 at 4-5.] Mr. Brooks-Albrechtsen ignores, however, that Indiana law provides that

> [u]pon approaching a stationary authorized emergency vehicle, when the authorized emergency vehicle is giving a signal by displaying alternately flashing red, red and white, or red and blue lights, a person who drives an approaching vehicle shall . . . proceeding with due caution, reduce the speed of the vehicle to a speed at least ten (10) miles per hour less than the posted speed limit, maintaining a safe speed for road conditions, if changing lanes would be impossible or unsafe.

Indiana Code § 9-21-8-35.[3]  Because the road on which Mr. Brooks-Albrechtsen was driving allowed only one lane of traffic to travel in the direction he was headed, [Filing No. 14], he was

---

[3] In his Motion to Strike, Mr. Brooks-Albrechtsen argues that the Court should not allow Officer Mitchell to rely on this statute because he cited it for the first time in his reply brief. [Filing No. 53 at 1.] While Officer Mitchell specifically cited the statute for the first time in his reply brief, his original brief references it by arguing that he had probable cause because as Mr. Brooks-Albrechtsen approached he was "continuing at a high rate of speed and not slowing down in the same lane as the stopped patrol cars and truck. Officer Mitchell had a good faith belief that [Mr. Brooks-Albrechtsen] had committed infractions (speeding and improperly approaching the patrol cars with lights flashing). . . ." [Filing No. 29 at 6.] Moreover, Officer Mitchell's specific citation

required to "reduce the speed of the vehicle to a speed at least ten (10) miles per hour less than the posted speed limit." I.C. § 9-21-8-35. The video from Mr. Brooks-Albrechtsen's dashboard camera clearly confirms that Mr. Brooks-Albrechtsen did not decelerate upon seeing the flashing emergency lights. [Filing No. 14.] Mr. Brooks-Albrechtsen has not cited evidence—or even argued—that he was already traveling at least ten miles per hour less than the posted speed limit. Thus, the undisputed video evidence, which is the evidence on which the Court should primarily rely, *Williams*, 809 F.3d at 942, confirms that Officer Mitchell had probable cause to stop Mr. Brooks-Albrechtsen's vehicle to investigate his violation of Indiana Code § 9-21-8-35,[4] [Filing No. 14].

As detailed above, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 135 S. Ct. at 1614. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* During their short encounter, Officer Mitchell asked Mr. Brooks-Albrechtsen a few questions and pointed out that when he saw Mr. Brooks-Albrechtsen's headlights, he could "still hear your

---

to that statute in his reply brief was a direct response to Mr. Brooks-Albrechtsen's argument that even rapid acceleration would not violate Indiana law. [Filing No. 42 at 8.] For these reasons, the Court denies Mr. Brooks-Albrechtsen's request to strike Officer Mitchell's citation to Indiana Code § 9-21-8-35 because Officer Mitchell did not raise a new argument for the first time on reply. [Filing No. 53.]

[4] Mr. Brooks-Albrechtsen argues that he showed the video to an intake specialist for the City of Indianapolis and that she "commented that [his] vehicle did not appear to be travelling fast." [Filing No. 13-1 at 2.] The Court agrees with Officer Mitchell that this out-of-court statement offered to prove the truth of the matter asserted is hearsay, [Filing No. 29 at 3; Fed. R. Evid. 801], and Mr. Brooks-Albrechtsen does not cite an exception that would render the statement admissible, [Filing No. 42 at 3]. Moreover, the intake specialist's opinion does not bear on the key issue regarding whether Mr. Brooks-Albrechtsen slowed down when he saw the flashing emergency lights, as he was required to do by Indiana Code § 9-21-8-35. Instead, the undisputed video evidence confirms that he did not. [Filing No. 14.]

car going at a high rate of speed when you see these red and blue lights." [Filing No. 13-1 at 1-2; Filing No. 14.] Officer Mitchell told Mr. Brooks-Albrechtsen to slow down and then terminated the encounter without issuing Mr. Brooks-Albrechtsen a ticket. [Filing No. 13-1 at 1-2; Filing No. 14.] While Mr. Brooks-Albrechtsen did not like Officer Mitchell's authoritative tone during the encounter, [Filing No. 13-1 at 2], it is beyond dispute that based on the video evidence, no reasonable fact-finder could find that the length of Officer Mitchell's brief encounter with Mr. Brooks-Albrechtsen violated the Fourth Amendment.

Reasonableness is the "ultimate touchstone" of the Fourth Amendment. *Brigham City*, 547 U.S. at 398. The undisputed video evidence of the brief encounter between Mr. Brooks-Albrechtsen and Officer Mitchell confirms that no reasonable fact-finder could find that Officer Mitchell's behavior was anything other than reasonable. Accordingly, because Officer Mitchell did not violate Mr. Brooks-Albrechtsen's Fourth Amendment rights, Officer Mitchell is entitled to qualified immunity, and summary judgment must be entered in his favor.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **DENIES** Mr. Brooks-Albrechtsen's Motion to Strike, [Filing No. 53], **DENIES** Mr. Brooks-Albrechtsen's Motion for Summary Judgment, [Filing No. 13], and **GRANTS** Officer Mitchell's Motion for Summary Judgment, [Filing No. 28]. Final judgment shall issue accordingly.

Date: 9/13/2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via US Mail:**

MARK A. BROOKS-ALBRECHTSEN
2230 Stafford Road
Suite 115
Plainfield, IN 46168

**Distribution via CM/ECF:**

Kathryn M. Box
OFFICE OF CORPORATION COUNSEL
kathryn.box@indy.gov

Lynne Denise Hammer
OFFICE OF CORPORATION COUNSEL
lynne.hammer@indy.gov

Pamela G. Schneeman
OFFICE OF CORPORATION COUNSEL
pamela.schneeman@indy.gov

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com